24157

In the Matter of Brian P. GIBBES, Respondent.

(450 S.E. (2d) 588)

Supreme Court

*Atty. Gen. T. Travis Medlock* and *Asst. Atty. Gen. James G. Bogle, Jr.,* Columbia, *for complainant.*

*Morris D. Rosen,* Charleston, *for respondent.*

Submitted Sept. 28, 1994.

Decided Oct. 24, 1994.

*Per Curiam:*

In this attorney discipline matter, respondent has admitted the allegations of misconduct against him and consents to disbarment. This Court has previously publicly reprimanded respondent, *Matter of Gibbes,* — S.C. —, 482 S.E. (2d) 482 (1993), and on March 16, 1994, temporarily suspended Gibbes' license to practice law. We accept the admissions and disbar respondent from the practice of law.

### NationsBanc Mortgage Corporation Matter

As a requirement of Gibbes' public reprimand, he was ordered to make restitution in the amount of $26,500 to Nations-Banc Mortgage Corporation for an amount owed on a mortgage. Gibbes admits he devised and implemented a fraudulent and illegal scheme, commonly referred to as check kiting, to create an artificial balance and wrote a check to NationsBanc for this restitution against uncollected funds.

### Second NationsBank Matter

Gibbes owed NationsBank restitution as a result of his check kiting activities. Respondent admits he misappropriated and converted client funds in order to repay Nations-Bank. The funds misappropriated exceeded $216,000.

### Hill Matter

Gibbes represented the Hills in a real estate refinancing. He received funds in the amount of $187, 550.00 which were to be disbursed to Blue Bonnet Savings Bank, NationsBank, and

the Hills. Gibbes admits he misappropriated the amount to be paid to Blue Bonnet by fraudulently altering the check make payable to Blue Bonnet. He presented the altered check to Atlantic Savings Bank in return for a cashier's check payable to NationsBank. Gibbes then altered the check to its original appearance so it would appear to be payable to Blue Bonnet and he gave false information about the payment of funds to Blue Bonnet Bank. As a result of this fraudulent activity, First American Title Insurance Company suffered a loss of $115,781.99.

### Keiger, Pinney and Hadden Matters

Gibbes represented Resorts USA in real estate closings with Keiger, Pinney and Hadden. Pursuant to these closings, he received funds from Resorts USA which were to be disbursed to these individuals from an escrow account. Gibbes admits misappropriating approximately $125,000 from this account so that the checks written to each individual were returned due to insufficient funds. Further, Gibbes then provided false information about the status of his escrow accounts to these individuals and their agents. Gibbes eventually reimbursed the individuals by misappropriating funds from other clients.

### The $54,576 Misappropriation Matter

From the funds received by Gibbes from Resorts USA for the above-mentioned real estate closings, Gibbes admits he misappropriated and converted to his personal use $54,576 to satisfy a debt owed to NationsBank.

### Decrescenzo Matter

Gibbes represented the Decrescenzos in a real estate refinancing. He admits he misappropriated and converted the majority of the $149,000 he received into his escrow account from this transaction to pay off the money he owed to Pinney and Hadden. Gibbes unsuccessfully attempted to convert part of the remaining funds to repay a loan to his father. Gibbes did convert part of the funds to his personal use by issuing a check to his law office. Furthermore, Gibbes did not use the funds received to pay a car loan and mortgage for the Decrescenzos as he was employed to do. He presented to the Decrescenzos misleading, deceitful, and false information in a letter regarding their mortgage payoff. These debts were ulti-

mately paid by First American Title Insurance Company which accepted a loss of approximately $86,185.78 plus accrued interest and penalties.

### Van Dam Matter

Gibbes represented Ms. Van Dam in a personal injury matter and received a lump sum settlement of $45,000. Gibbes placed these funds into an escrow account. He admits he misappropriated and converted funds in the amount of $25,994.71 for other uses. He then sent a check to Ms. Van Dam for her portion of the settlement, which was subsequently dishonored by her bank due to insufficient funds. Gibbes falsely advised Ms. Van Dam that a bank merger caused the dishonorment. Gibbes subsequently reimbursed Ms. Van Dam with a check issued from an operating account of his law office.

### Residential Mortgage Matter

Gibbes' residential mortgage became delinquent and he negotiated a $40,000 settlement to be paid to the lender. Gibbes admits he paid this money by misappropriating client funds.

In our opinion, respondent's conduct warrants disbarment. Respondent has violated Rule 1.15 of the Rules of Professional Conduct, Rule 407, SCACR, by failing to safeguard and preserve the identity of client funds. Respondent has also violated Rule 8.4 by engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation, and by engaging in conduct that is prejudicial to the administration of justice.

It is therefore ordered that respondent shall be disbarred from the practice of law in this State. In addition to the requirements of Paragraph 87 and 88, Rule 413, SCACR, no petition for reinstatement shall be accepted until respondent has filed proof that he had made full restitution to all institutions and individuals who have been defrauded as a result of his criminal acts, to include restitution to the Clients' Security Fund for any payment it may make. Respondent shall file an affidavit with the Clerk of Court, within fifteen (15) days of the date of filing of this opinion, showing that he has complied with Paragraph 80 of Rule 413, SCACR.

Disbarred.